UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ROY FRANKLIN SMITH *et al* § | |
| § | |
| Plaintiffs § | |
| VS. § | CIVIL ACTION NO. G-09-304 |
| § | |
| UNITED STATES OF AMERICA § | |

**MEMORANDUM AND ORDER**

I.

Before the Court is the defendant, the United States of America's ("Government") Motion to Dismiss (Document No. 25) and the plaintiffs, Roy Franklin Smith's and Ruby Jean Smith's response (Document No. 26). The Government's motion is brought pursuant to Federal Rules of Civil Procedure, Rule (12)(b)(6). After a careful review of the pleadings and memoranda on file, the Court is of the opinion that the Government's motion should be granted.

II.

The background facts are relatively undisputed. The plaintiff, Roy Franklin Smith, had surgery on his gallbladder at the Veterans Hospital in Houston, Texas, in August 1983. The surgery (cholecystectomy) was performed by the physicians, none of whom reported complications during surgery that would require a blood transfusion. Some 25 years later the plaintiffs bring this suit, alleging that as a result of a blood transfusion performed during the surgery, Roy Franklin Smith now suffers Hepatitis C. He contends that contaminated blood is the course of his current illness.

III.

The Government contends that the plaintiff's Hepatitis C is not the result of a blood transfusion during his surgery. The Government relies upon the medical records that indicate

that the cholecystectomy [gallbladder] surgery was routine and the plaintiff's hemoglobin count prior to and during surgery establish that the plaintiff's blood loss was such that a blood transfusion would not have been necessary. The Government also relies on its records, the preoperative and post-operative records and discharge summary, as evidence that no blood transfusion was needed or performed.

The plaintiffs contend that other Veterans Hospital records show that Mr. Smith, in fact, contracted "Hepatitis C with RAD" through a blood transfusion in 1983 at the time that the plaintiff underwent gallbladder surgery. The plaintiffs point to the records of Bhupinderjit Anand, M.D., a member of the staff at the Veterans Hospital. In notes dated November 8, 2000, Dr. Anand recorded that the plaintiff had a "HCV infection" and that "he got HCV from blood transfusion in 1983 at time of gallbladder surgery." Earlier, in December 1999, Jonathan Fisher, M.D. recorded that PMH (patient medical history) revealed Hepatitis C, post-blood transfusion during cholecystectomy in 1983. Finally, the plaintiff asserts that he observed three "I.V. bags" attached to him after he came out of the 1983 surgery, and that one of the I.V.s was blood. Mr. Smith further contends that at the time, he confronted Dr. Edmond Owen who confirmed that he had been given blood both during and after surgery.

IV.

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual

allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her

claims, not whether the plaintiff will eventually prevail.  *Twombly*, 550 U.S. at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

V.

In their "amended corrected complaint" the plaintiffs assert the following causes of action against the Government pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.*":  (a) the Veterans Hospital was negligent when it administered a blood transfusion that was not free from contamination; and (b) the blood product used in the transfusion was defectively designed, manufactured, maintained, tested, monitored and/or generated. Each of these claims for relief under the FTCA finds its basis in Texas statutory and/or common law.  Therefore, the burdens of proof and defenses that apply to the asserted state law causes of action apply to the plaintiffs' suit.  *See, Hollis v. United States*, 323 F.3d 330, 334 (5th Cir. 2003) (internal citations omitted).  Among the defenses asserted by the government, two resonate and will be addressed here in the alternative.

First, the medical records associated with the plaintiff's gallbladder surgery conclusively show that the plaintiff was not administered a blood transfusion either during or after surgery. This fact is established, both by the medical records and the affidavits of the physician who performed the surgery.  Each of the three surgeons involved in the plaintiff's surgery, Drs. Edmond Owen, Clark Becket and William F. Turner examined the relevant records associated with the plaintiff's surgery and made the following declaration:

> I, Dr. Edmond Owen, do solemnly declare the following:
>
> 1. I am a thoracic and cardiovascular surgeon at the Owen Clinic P.C.  I currently reside in Memphis, Tennessee.
>
> 2. In August 1983, I was a participant in a residency program at

       the Veterans Administration Hospital ("VA") located in Houston, Texas.

3. I was one of the doctors who performed a cholecystectomy on Franklin Roy Smith [sic] in August 1983.

4. To refresh my memory regarding this surgical procedure, I have reviewed the following records, which are attached hereto:

    a.) Mr. Smith's April 19, 2002 VA blood bank records;
    b.) Mr. Smith's Post Anesthesia Recovery Discharge/Transfer Note;
    c.) Mr. Smith's Hospital Summary Records;
    d.) Mr. Smith's Pathological Report;
    e.) The second page of Mr. Smith's Operation Report;
    f.) Mr. Smith's Hospital entrance records;
    g.) Mr. Smith's discharge summary;
    h.) Mr. Smith's lab chemistry panels;
    i.) Mr. Smith's x-ray reports;
    j.) Various notes taken by medical staff;
    k.) Mr. Smith's Clinical Record Report on Measure for Intake and Output;
    l.) Mr. Smith's Clinical Record Report on Recovery Room Parameter Flow Sheet; and
    m.) Clinical Record Report on Recovery Room Admission Note.

5. Based on my medical training and review of the above-mentioned medical records, Mr. Smith did not receive a blood transfusion during his 1983 surgery. There are several medical reasons that support this conclusion.

6. First, it is highly unusual to give a patient a blood transfusion when they are in having a cholecystectomy. There was no indication in any of the medical records that anything abnormal occurred during the procedure which would necessitate a blood transfusion.

7. Second, the medical records do not support the suggestion that a blood transfusion occurred. Mr. Smith's preoperative hemoglobin count was 14.9. During the surgery, Mr. Smith lost 300ml of blood. A 300ml loss of blood during surgery would drop Mr. Smith's hemoglobin count to approximately 13.9. Blood transfusions occur when the hemoglobin count is less than 10.0. Here, because Mr. Smith's hemoglobin count did not dip below the minimum threshold point of 10.0, he did not need a blood transfusion.

8. According to Mr. Smith's Post Anesthesia Recovery Discharge/ Transfer Note, the only fluid Mr. Smith received was 1700cc of IV fluid. The record shows that he was never given a blood transfusion. In addition, the medical records show that Mr. Smith left five days after his surgery, which is also consistent with an individual who did not have any adverse reactions to the surgery which would require a blood transfusion.

9. Additionally, in order for Mr. Smith to have received a blood transfusion, the hospital would have needed to type and cross-match his blood. According to the medical records, Mr. Smith's blood was not typed or cross-matched in 1983. This is another indication that Mr. Smith did not receive a blood transfusion during his 1983 surgery. Rather, the medical records indicate that Mr. Smith's blood was typed and cross-matched in 2002, several years later.

10. For all of these reasons, and based upon my medical training and review of the above-mentioned medical records, Mr. Smith did not receive a blood transfusion during his 1983 surgery.

I hereby certify that the above statements are true and correct to the best of my knowledge.

*See,* (Government's Exhibit 3 attached to its Motion to Dismiss). A review of the declaration and the medical records attached show conclusively that the plaintiff did not receive a blood transfusion. Moreover, the records also establish that the surgery was non-eventful and, therefore, a blood transfusion was unnecessary.

The plaintiffs argue that the records of Drs. Anand and Fisher show otherwise. However, the entries are not diagnostic or determinative of the source of the plaintiff's illness. And, they were not intended as such. They appear to be a 1999 recordation of patient history and a subsequent repeat of same in 2000. The two proffered records do not reveal the source of the doctor's determination that the plaintiff's source of Hepatitis C was a blood transfusion in 1983 during the gallbladder surgery. What is clear and unrefuted is the fact that the source of the recorded history was not the medical records associated with the plaintiff's surgery. Therefore,

the plaintiffs' proffered records are not determinative on the issue and cannot, as a matter of law, create a disputed fact issue where the medical records are the sole and best evidence of whether a blood transfusion was administered.

Equally, non-evidentiary is the plaintiff's affidavit that he saw an I.V. after surgery that contained blood. As well, the plaintiff's effort to create a factual dispute by relating what he represents was an admission by Dr. Owen that a blood transfusion was administered during and after surgery fails. This representation is refuted by Dr. Owen's affidavit, but most compelling, by the medical records. And, there are not contemporary or diagnostic records or expert opinion that reflect a blood transfusion in 1983. Finally, there is no disclosure of medical facts, beyond the plaintiff's statement to his later physicians, that explains Drs. Anand's and Fisher's notes to the file. Those notes were not diagnostic. Where an element of a cause of action can only be evidenced by the testimony of an expert witness, the nonmovant to a motion for summary judgment cannot establish a genuine issue of material fact if he or she fails to proffer expert testimony. *Winestead v. Ga. Gulf Corp.,* 77 Fed. Appx. 267, 271 (5th Cir. 2003); *O'Bryant v. Walker Cnty.,* No. H-08-1880, 2009 WL 3073924, at *5 (S.D. Tex. Sept. 21, 2009); *Lee v. U.S.,* No. 07-9157, 2009 WL 1046903, at *2 (E.D. La. Apr. 20, 2009); *Gutierrez v. Komastu Am. Corp.,* No. 3:02-CV-1313K, 2003 WL 22768681, at *2 (N.D. Tex. Nov. 20, 2003).

Therefore, the Court is of the opinion that there is no credible evidence presented by the plaintiffs that creates a fact question on the issue of whether the plaintiff received a blood transfusion in 1983. The credible evidence shows that he did not.

It is ORDERED that the plaintiffs' case be, and it is hereby DISMISSED with prejudice.

SIGNED at Houston, Texas this 30th day of August, 2010.

_____
Kenneth M. Hoyt
United States District Judge